Karen S. Spicker, SBN 127934
Doan Law Firm, LLP
2850 Pio Pico Drive, Suite D
Carlsbad, CA 92008
Phone (760) 450-3333 • Fax (760) 720-6082
karen@doanlaw.com

Attorneys for PLAINTIFFS

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA THOMPSON AND GENE ROBERT THOMPSON,<br><br>        Plaintiff,<br><br>vs.<br><br>CHASE BANK N.A., CHASE CARD SERVICE, IC SYSTEMS. INC., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 09 CV 2143 DMS POR<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>**Date: February 12, 2010**<br>**Time: 1:30 p.m.**<br>**Dept: 10** |

COMES NOW, PLAINTIFFS Patricia and Gene Robert Thompson, by and through their attorneys of record, and hereby submit the following Points and Authorities in support of their Opposition to Defendant Chase Bank, USA, N.A.'s (hereinafter referred to as "Defendant" or "Chase") Motion to Dismiss Plaintiffs' First Amended Complaint and Motion to Strike.

///

///

///

---

# TABLE OF CONTENTS

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  **SUMMARY OF THE FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Chase had actual Notice of Both of the Cease and Desist Notices . . . . . . . . . . . . 2

    B.    Defendant Chase Committed the Wrongful Act of Calling
Plaintiffs (259) Times . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  **PROCEDURAL SUMMARY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Defendants Failed to Satisfy the Standard for Dismissal
Under Rule 12(b)6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.    Plaintiff's RFDCPA Causes of Action, One through Eight each Allege facts
sufficient to establish a Prima Facie Cause of Action Under California Civil Code
§1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Defendant Chase Violated 15 U.S.C. §1692c(a)(1) by Calling Plaintiff on Easter,
Mother's Day and Memorial Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    Plaintiffs Stated a Cause of Action under §1692e(8), the Seventh Cause of Action
and under §1785.25(a), the Eighth Cause of Action since Defendant Chase had
Actual Knowledge of the Fact Plaintiffs Disputed the Debt . . . . . . . . . . . . . . 11

    E.    Plaintiff Alleged a Valid Cause of Action for Invasion of Privacy - Intrusion upon
Seclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    F.    Plaintiffs have Pled a Physical Injury and as such have stated a Cause of Action
for Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    G.    Calling a Person (259) Times is Sufficient Outrageous and Extreme Contduct for
Purposes of stating a Cause of Action for Intentional Infliction of Emotional
Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    H.    Plaintiff has Properly Stated a Cause of Action for Tort-In-Se Under any one of
the RFDCPA Violations Alleged in Causes of Action One through Eight . . . . . 16

I.    Defendant's Argument From Preemption Does Not Apply to Libel and and §1785.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

J.    Defendant's Motion to Strike Plaintiffs' Prayer for Damages is Unfounded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    1.    Under the RFDCPA, Damages Should Be Awarded Per Violation, Not Per Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    2.    The Plain Meaning of Civil Code §1788.30 Supports Awarding Damages Based on Each Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    3.    Defendant's Interpretation of RFDCPA Runs Counter to the Spirit of the RFDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    4.    Defendant's Interpretation of RFDCPA would cause undue burden to the court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

K.    There is Absolutely No Basis to Strike Exhibit "A," Plaintiff's Notice to Cease and Desist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1

## TABLE OF AUTHORITIES

### CASES

2

**FEDERAL**

3

Alkan v. Citimortgage
366 F. Supp. 1061, 1063 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4

5

Bankston v. Phycom Corp.
2008 U.S. Dist. Lexis 83073 (N.D. Cal. Sept. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6

Bell Atlantic Corp v. Twombly
550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7

8

Bolton v. Pentagroup Financial Services, LLC
2009 Lexis 25585 (E.D. Cal. Mar. 16, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

Burgert v. Lokelani Bernice Pauahi Bishop Trust
200 F. 3d 661, 663 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

10

Conley v Gibson
355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

12

Corsican Productions v. Pitchess
338 F. 2d 441, 442 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13

Deteresa v. Am. Broad Cos., Inc.
121 F.3d 460, 465 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14

15

Dura Phars., Inc. v. Brudo
544 U.S. 336, 347 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

Fausto v. Credigy Servs. Corp.
598 F. Supp. 2d 1049, 1056 (N.D. CA 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

17

18

Gibson v United States
781 F. 2d 1334, 1337 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

19

Gorman v. Wikoiff & Abramson, LLP et. al.
552 F. 3d 1008, 1028 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

20

21

Hall v. City of Santa Barbara
833 F. 2d 1270, 1274 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

22

In re: Crown Vantage, Inc.
2004 U.S. Dist. Lexis 13810 (N.D. Cal July 12, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

23

24

Joseph v. J.J. Mac Intyre Cos., LLC
281 F. Supp. 2d 1156, 1159 (N.D. Cal. 200) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

25

Kindley v. Flagstar Bank (Chase Manhattan Mortgage Corporation)
2004 U.S. Dist. Lexis 31025 (S.D. Cal. Oct. 28, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26

27

Kuhn v. Account Control Technology
865 F. Supp. 1443, 1448 (D. Nev. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC AND
MOTION TO STRIKE**

iii

Pacheco v. Citibank, N.A.
2007 U.S. Dist. Lexis 34821 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Panahiasl v. Gurney
2007 U.S. Dist. Lexis 17269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 16

U.S. v. Redwood City
640 F. 2d 963, 966 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Yack v. Washington Mutual, Inc.
2008 WL 2492169 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

**STATE**

Allen v. Jones
104 Cal. App. 3d 207, 215 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Centerpoint Energy, Inc. v. Superior Court of San Diego
157 Cal. App. 4th 1101, 1120 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Christensen v. Superior Court
54 Cal 3d 868, 903 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Crisci v. Security Ins. Co.
66 Cal. 2d 425 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Dillon v. Legg
68 Cal. 2d 728 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mendoza v. City of Los Angeles
66 Cal. App. 4th 1333, 1339 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Molien v. Kaiser Foundation Hospitals
27 Cal. 3d 916, 930 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Monarch Bay II v. Professional Services Industries, Inc.
75 Cal. App. 4th 1213, 1216-1217 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ojavon Investors, Inc. v. California Coastal Commission
26 Cal. App. 4th 516, 527 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Shulman v. Group W. Productions, Inc.
18 Cal. 4th 200, 231 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

South Bay Building Enterprises, Inc. v. Riviera Lend-Lease
72 Cal. App. 4th 1111, 1123 (1999) . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

Wolski v. Fremont Investments & Loan
127 Cal. App. 4th 347, 351 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

# STATUTES

2 **STATE**

3 California Civil Code §1785.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

4 California Civil Code §1785.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 California Civil Code §1788.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6 California Civil Code §1788.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7 California Civil Code §1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 10, 19

8 California Civil Code §1788.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

9 California Civil Code §1788.30(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19, 20

10 California Civil Code §2330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

11

12 **FEDERAL**

F.R.Civ.P. Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
13
F.R.Civ.P. Rule 12(b)6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
14
15 U.S.C. §1666 Fair Credit Billing Act ("FCBA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7
15
15 U.S.C. §1681 Fair Credit Reporting Act (FCRA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
16
15 U.S.C. §1681h(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
17
15 U.S.C. §1681t . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
18
15 U.S.C. §1692b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 19
19
15 U.S.C. §1692c(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
20
15 U.S.C. §1692(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
21
15 U.S.C. §1692(e)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 17
22
15 U.S.C. §1692k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
23
15 U.S.C. §1692k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
24
28 U.S.C. §1441(a) Notice of Removal Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
25

26 **OTHER AUTHORITIES**

27 Washington Mutual Purchase and Assumption Agreement (P & A) . . . . . . . . . . . . . . 2, 3, 8, 10

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This action arises out of the Defendant's numerous violation of California Civil Code §1788.17, et seq., the Rosenthal Fair Debt Collection Act ("RFDCPA") and is the result of Defendant Chase's illegal collection efforts wherein Chase called the Plaintiffs repeatedly and continuously for **(259) times** over a period of only **three months**. The facts in this case are simple and well pled. There are no ambiguities.

Defendants erroneously attack Plaintiff's **First through Third** and **Sixth through Eighth Causes of Action**, under the RFDCPA based on a purported lack of knowledge. This is a subterfuge since Defendant could readily ascertain the fact Plaintiffs were represented by Doan Law Firm, LLP from the records it received from the now defunct Washington Mutual Bank (hereinafter "WAMU"). Moreover, Defendant Chase obtained the Plaintiffs' credit card account subject to same notices, restrictions and limitations of its predecessor WAMU. Defendant Chase had this account for over 5 months and someone at the address listed on the Cease and Desist **actually signed** the Certified Mail Receipt further evidencing receipt of the same.

Plaintiffs have also more than adequately pled the **Ninth cause of action** for **invasion of privacy** since Defendant repeatedly and continuously called Plaintiffs **(259) times** in total, within a three month period which would be highly offensive to any reasonable person. The courts have recognized that repeated and continuous calls are abusive and constitute an intrusion upon one's right to be left alone.

The **Tenth cause of action** for **negligence** is also well pled since the Plaintiffs did sustain physical injury. In fact, it is specifically alleged that Plaintiff Patricia Thompson suffered from atrial fibrillation and sustained severe migraine headaches as a result of the shear volume of calls. Moreover, it is specifically alleged that the Plaintiffs suffered "physical harm". This is more than sufficient for purposes of this motion.

The **Eleventh Cause of Action** states a valid cause of action for **intentional infliction of**

1   **emotional distress** based on the shear volume of calls placed by Defendant in a short period of

2   time.  In fact, Plaintiffs specifically alleged that the Defendant Chase called multiple times,

3   (10)-(12) times, in a <u>single day</u> and called for **(96) days straight**. Defendant's pattern and

4   practice of harassment is extreme and outrageous. It demonstrates Defendant's "stop at nothing"

5   attitude and scorched earth tactics.

6         Plaintiffs' **Twelfth Cause of Action** also states a valid cause of action for **tort in se** since

7   Plaintiffs have alleged <u>numerous</u> violations of the RFDCPA. There is a total of (7) statutory

8   violations alleged. The **First through the Eighth Causes of Action** each give rise to this cause

9   of action for tort in se.

10         Finally, the **Thirteenth Cause of Action** for libel is not preempted or barred by the Fair

11   Credit Reporting Act under 15U.S.C. 1681t(b)(f)(ii) and §1785.25(s) is specifically excepted

12   therefrom.

13

14   **II.**

15   <u>**SUMMARY OF THE FACTS**</u>

16

17   A.   <u>**Chase had actual Notice of the Both of Cease and Desist Notices**</u>

18         First, on **September 25, 2008**, Defendant Chase purchased certain assets of the defunct

19   WAMU pursuant to a Purchase and **Assumption** Agreement (hereafter "P & A" agreement, a

20   true and correct copy is attached as **Exhibit "1"** to Plaintiffs' Request for Judicial Notice, filed

21   concurrently herewith.)  Second, Defendant Chase admits in it's own Motion to Dismiss on

22   page 3, lines 12-14, that Plaintiffs' credit card account was <u>included</u> in the assets transferred to

23   Chase. Third, on February 19, 2009, five (5) months after the P & A, Plaintiffs pulled a copy of

24   their credit report for purposes of preparing the Cease and Desist Notices, **Exhibit "A"** of the

25   FAC. Fourth, Plaintiffs' credit report still listed the accounts as held by WAMU and listed the

26   inquiry address whereat the Cease and Desist Notices were, a true and correct copy is attached

27   as **Exhibit "2"** to Plaintiffs' Request for Judicial Notice). Chase never updated any information

28

1   with any of the three credit bureaus to change the inquiry address for these accounts, despite

2   having over five months to do the same.

3         Plaintiffs sent **two** Cease and Desist Notices, both are attached collectively as **Exhibit**

4   **"A"** to Plaintiffs' First Amended Complaint (hereinafter "FAC") to Defendant's predecessor,

5   Washington Mutual at the address reflected on their credit report as the inquiry address for

6   Washington Mutual. (FAC ¶¶ 23-26). The P & A agreement specifically provides at page 13,

7   Paragraph 4.2, titled, "Agreement with Respect to Debit and Credit Card Business":

8         "The Assuming Bank [Defendant Chase] **agrees to honor and perform**, from and after

9         Bank Closing, **all duties and obligations with respect** to the Failed Bank's [WAMU's]

10         debit and **credit card business**, and/or processing related to debit and credit cards, if

11         any, and assumes all outstanding extension of credit with respect thereto."

12   In this case, Plaintiffs sent **two** Cease and Desist Notices, attached as **Exhibit "A"** to the FAC

13   to WAMU on February 19, 2009, **five months after** the P & A agreement. (FAC ¶¶ 23-26) The

14   receipt of **both** Cease and Desist Notices is verified by the certified mail receipts attached

15   collectively as **Exhibit " B"** of Plaintiffs' FAC. As such Defendant Chase, as successor interest

16   had a duty and an obligation just like WAMU to cease and desist any contact with the Plaintiffs.

17         Moreover, the P & A Agreement at page 19, Paragraph 6.1 (a) (vii.), entitled, "Transfer

18   of Records" further provided:

19         "the Receiver [Federal Deposit Insurance Corporation ("FDIC")] assigns, transfers,

20         coveys and **delivers to Assuming Bank** [Defendant Chase] the following records... :

21             (vii)   **records pertaining to the credit card business."**

22   Thus, Defendant should have been given the records pertaining to Plaintiffs account and as such

23   are imputed with actual knowledge of or could readily ascertain therefrom that Plaintiffs were

24   represented by Counsel and had to cease and desist any further contact with Plaintiffs.

25   Defendant cannot "sanitize" its wrong by standing behind the transfer of this account from its

26   predecessor, WAMU. Defendant Chase is bound by all the same notices and restrictions as

27   WAMU. It received no greater rights to collect on this account than what WAMU was entitled

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FAC AND
MOTION TO STRIKE**

3

1    to do.

2         Plaintiffs throughout the entire FAC alleged that Defendant had actual knowledge and

3    acquired the account subject to all notices and restrictions in regard thereto. The FAC alleges:

4         "All of the Defendant Washington Mutual's assets and most of said Defendant's

5         liabilities were assumed by Defendant JP Morgan Chase. Thus, Chase stepped into the

6         shoes of Washington Mutual. " (FAC ¶ 9) (emphases added)

7         "Chase assumed all assets and liability of Washington Mutual and was operating in its

8         place. As such Defendant received notice of the same as evidenced by the certified mail

9         receipt." (FAC ¶ 24) (emphases added)

10        "Plaintiffs sent Defendants a written Cease and Desist Order dated February 19, 2009

11        via certified mail, **Exhibit "A."** Defendant Chase stepped into the shoes of Washington

12        Mutual and assumed all assets and liabilities prior to February 19, 2009, and as such

13        **Defendants were put on notice**." (FAC ¶ 40) (emphasis added)

14        "Despite knowledge of attorney representation, Defendants intentionally, willfully,

15        deliberately and knowingly, refused to abide by the laws of the RFDCPA, FDCPA and

16        the FCRA, as set forth in the Cease and Desist Order, and communicated with Plaintiffs

17        with regard to the alleged debt." (FAC ¶ 48).

18        In addition, it is also alleged that sometime during March through May of 2008,

19   Plaintiffs  also gave verbal notice to Chase. Contrary to Defendant's assertion, this does not in

20   any way contradict any pleading filed in this matter and certainly not Plaintiffs' original

21   complaint. This is a new fact added to the complaint and clearly contradicts Defendant's

22   continued assertion that no amendment were made to the FAC.

23        Accordingly, despite Defendant Chase's vitriolic misrepresentations to this court and its

24   hyperbole, each of the allegations quoted above are **wholly new** to the FAC.[1] Defendant's

25   statements to the contrary are simply false and designed to create confusion on the issue of

26   _____

27        [1]FAC removed the cause of action under 15 U.S.C. §1692b and 1666(b), as well as

28   adding 11 U.S.C. 1692e(8), Negligence, and Intentional Infliction of Emotional Harm.

1  notice where none exists. Defendant Chase predecessor received and signed for **TWO** Cease

2  and Desist Notices, the receipt of both is acknowledged, plus had verbal notice and had at least

3  **three** opportunities to get it right, but failed each time.

4  **B.    Defendant Chase Committed the Wrongful Act of Calling Plaintiffs (259) Times**

5        In it's own Motion to Dismiss at page 3, Chase admits **it** called Plaintiffs and not

6  WAMU. Chase admits the calls were made **after** it acquired Plaintiffs account from WAMU.

7  Further, all (259) calls by Chase are verified through Phone Records which are attached at

8  **Exhibit "C"** of Plainitffs' FAC. The date, time of each and every of the (259) calls is verified

9  by phone records. Thus, there is nothing left for conjecture or speculation as claimed by the

10 Defendant Chase.

11       Despite receiving the above Cease and Desist Order (**Exhibit "A"**) and despite having

12 knowledge of the same, Defendants willfully, deliberately and knowingly continued to

13 communicate with the Plaintiff as evidenced by the phone calls, letter and billing statement,

14 records of which are attached as **Exhibits "C-D"**. (FAC ¶ 56) Based thereon, it is alleged in the

15 **First** through **Third** and the **Sixth** through **Eighth Causes of Action**, that Defendants violated

16 California Civil Code §1788.17 by continuing to communicate with Plaintiff when he was

17 represented by counsel, Doan Law Firm, LLP. Moreover, Plaintiffs believe that through

18 discovery once auto dialer logs and credit uploads are produced by Defendants that additional

19 violations by the Defendant of the RFDCPA and FCBA will also be further revealed.

20       The shear volume of the calls, (259) in all, over a three month period, with (10)-(12)

21 calls sometimes placed in a single day, give rise to the other tort causes of action for invasion of

22 privacy and intentional infliction of emotional distress. (FAC ¶¶ 50-56, 100-104, 113-115, 141-

23 142,and 157–158) Defendants relentless and unwavering calls are specifically alleged.

24 (FAC ¶¶ 50-56, 100-104, 113-115, 141-142,and 157–158) Defendant called Plaintiffs (5) times

25 in a single day on (83) different days. (FAC ¶ 51) Defendant contacted Plaintiffs (78) times

26 within (13) days. (FAC ¶ 51) Defendant called Plaintiffs for (96) days straight. (FAC ¶¶ 100-

27 104). Thus, Defendants conduct in calling was outrageous to any reasonable person.

28

Finally, Plaintiffs clearly and specifically allege their physical injuries. As a result of Defendants unwavering calls, "Plaintiff Patricia Thompson suffers from atrial fibrillation and migraines and is taking medication" for the same. (FAC ¶¶ 51, 143, and 155) It is alleged, "Patricia Thompson was diagnosed with atrial fibrillation and migraines." (FAC ¶ 143) As a result of Defendant's negligence, Plaintiffs suffered "physical harm." (FAC ¶ 155) Accordingly, the Plaintiffs have alleged overwhelming facts to support each and every one of the causes of action alleged.

## III.

## PROCEDURAL SUMMARY

Plaintiff's original complaint for damages, declaratory relief, for violations of RFDCPA, right to privacy and tort in se was filed on August 5, 2009. On or about September 30, 2009, Defendant Chase filed a Notice of Removal of Action pursuant to 28 U.S.C. §1441(a) and a Motion to Dismiss on November 4, 2009.

Plaintiff's First Amended Complaint for damages, declaratory relief, for violations of RFDCPA, right to privacy and tort in se was filed December 28, 2009. On or about January 14, 2010, Defendant Chase filed a Motion to Dismiss the FAC, or in the Alternative, Motion to Strike. As of date, no discovery has been conducted in this matter.

Contrary to Defendant Chase's repeated erroneous statements, the FAC is not identical to original complaint. Plaintiffs completely removed two causes of action under 11 U.S.C. §1692b and §1666(b), added two new causes of action for negligence and intentional infliction of emotional distress, and added additional allegations regarding Defendant Chase's actual knowledge of Plaintiffs Cease and Desist Notices as clearly set forth above. But most importantly, Plaintiffs are allowed, as a matter of right, to amend their complaint. As Judge Sabraw acknowledged that the parties herein had a vastly different interpretation of the law and facts alleged and as such Plaintiffs were entitled to amend as a matter of right.

# IV.

## ARGUMENT

**A.**    **Defendants Failed to Satisfy the Standard for  Dismissal Under Rule 12(b)6**

It is axiomatic that in deciding a motion to dismiss for failure to state a claim, the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in light most favorable to the plaintiff". <u>Yack v. Washington Mutual, Inc.</u> 2008 WL 2492169 (N. D. Cal. 2008); <u>Burgert v. Lokelani Bernice Pauahi Bishop Trust</u> 200 F. 3d 661, 663 (9th Cir. 2000); <u>Gibson v. United States</u> 781 F. 2d 1334, 1337 (9th Cir. 1986). Moreover, the accepted rule is that a complaint is not to be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Conley v. Gibson</u> 355 U.S. 41, 45-46 (1957); <u>U.S. v. Redwood City</u> 640 F. 2d 963, 966 (9th Cir. 1980); <u>Alkan v. Citimortgage</u> 366 F. Supp. 1061, 1063 (N.D. Cal. 2004). Under this rule, it is only the extraordinary case in which a dismissal is proper. <u>Corsican Productions v. Pitchess</u> 338 F. 2d 441, 442 (9th Cir. 1964); See also, 5 C. Wright & A. Miller, Federal Practice and Procedure. Accordingly, "[a] motion to dismiss for failure to state a cause of action is viewed with disfavor and is rarely granted." <u>Hall v. City of Santa Barbara</u> 833 F. 2d 1270, 1274 (9th Cir. 1986); <u>Pacheco v. Citibank, N.A.</u> 2007 U.S. Dist. Lexis 34821(N. D. Cal. 2007).

Federal Rules of Civil Procedure, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief. Ordinary pleading rules are not meant to impose a great burden upon a Plaintiff". <u>Dura Phars., Inc v. Brudo</u> 544 U.S. 336, 347 (2005). A complaint need only contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u> 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>

///

///

1  **B.**      **Plaintiff's RFDCPA Causes of Action, One through Three Allege Facts Sufficient to**

2            **Establish Defendant Chase Clearly had Notice to Cease and Desist**

3            Defendants' argument that they did not receive notice to cease and desist,  which is the

4    basis for most of their motion to dismiss, is disingenuous. First, **both** Cease and Desist Orders

5    (attached collectively as **Exhibit "A"**) were sent to WAMU, Defendants predecessor. Defendant

6    Chase acquired assets and liabilities of WAMU. (See the P & A agreement, attached to

7    Plaintiffs' Request for Judicial Notice) five (5) months prior. Defendant specifically

8    acknowledges that it acquired Plaintiffs' credit card account with WAMU as of **September 2008**

9    in its Motion to Dismiss at page 3**.** Both Cease and Desist Notices were sent on **February 19,**

10   **2009** (See **Exhibit "A"** of FAC). This is **five months** after Defendant's acquired Plaintiff's

11   account. But, it is important to note that  the **certified mail receipt**s, were attached collectively

12   as **Exhibit "B"** to the FAC and dated, March 9, 2009. WAMU signed and verified receipt of the

13   notices. Thus, Defendant Chase did in fact have actual knowledge of the same and actual

14   knowledge is alleged.

15           Defendants further assert that the Cease and Desist notices were sent to the "incorrect

16   address" because they were sent to an inquiry address for WAMU. This was, however, the

17   inquiry address as provided for the accounts in question on the CBA Credit Report, to which

18   Defendant  must provide an inquiry address. (See Plaintiffs' Request for Judicial Notice

19   **Exhibit "2"**). Defendant, Chase as owner of the account since September of 2008, was obligated

20   to provide accurate contact information for inquiry to the credit bureaus. Thus, Defendant did

21   not change the address and as such bears the burden of the same, if in fact it was incorrect.

22           Under P & A agreement, Paragraph 6.1(a)(ii), entitled, "Transfer of Records", Defendant

23   Chase received all records pertaining to the credit card business. Based thereon, even if the

24   Cease and Desist Order had went to WAMU, all records relating to this account were to be

25   transferred to Defendant Chase. As such, Defendant could have readily ascertain therefrom that

26   there were  Cease and Desist Orders and to stop further communication with Plaintiffs.

27           Defendant Chase asserts that Plaintiffs should have sent the notice to the address

28

reflected on the Statements, copies are attached as **Exhibit "D"** of the FAC. [2] Again, this

argument is flawed. The letter and the statement, attached as **Exhibit "D"**, give an address

whereat payments should be sent. But, there is absolutely nothing on the documents attached as

**Exhibit "D"** that any Notices pursuant to the RFDCPA should in fact be sent to the address

mentioned.

Moreover, even assuming notice went to WAMU, notice is imputed to Defendant Chase

as the successor to this account. The court in In re: Crown Vantage, Inc. 2004 U.S. Dist. Lexis

13810 (N.D. Cal. July 12, 2004), imputed knowledge to a successor corporation. The court

reasoned that the predecessor's knowledge is not "erased" by the transfer of ownership and

knowledge once imputed does not disappear with a successor corporation. Id. Thus, even if

WAMU received notice, Defendant Chase was bound by the same. Defendant Chase receives the

account in question with the same limitations and restrictions that would bind its predecessor in

interest. Ojavan Investors, Inc. v. California Costal Commission 26 Cal. App. 4th 516, 527

(1994).

It should also be noted that even under a theory of successor liability, Defendant would

be responsible for any of WAMU's actions in failing to properly code this account. Successor

liability will be imposed on a successor if any of the following exception apply: (1) there is an

express or implied agreement of assumption; (2) the transaction amounts to a consolidation or

mergers of the two corporations; (3) the purchasing corporation is a mere continuation of seller;

or (4) the transfer of assets to purchaser is for the fraudulent purpose of escaping liability for the

sellers debts. Monarch Bay II v. Professional Services Industries, Inc. 75 Cal. App. 4th 1213,

---

[2]Defendant made an incorrect statement that Plaintiffs removed a statement from the

original complaint and did not include it in the FAC. This is false. Defendant is probably

confused since **Exhibit "C"** became **Exhibit "D"** in the FAC.  The March statement is included

in the FAC as **Exhibit "D"**.

1   1216-1217 (1999) and <u>Centerpoint Energy, Inc. v. Superior Court of San Diego</u> 157 Cal. App. 4th

2   1101, 1120 (2007).

3       The P & A agreement at **Paragraph 2.1** specifically provides in pertinent part,

4   "Assuming Bank expressly assumes at Book value and agree to pay, perform, discharge, **all of**

5   **the liabilities** of the Failed Bank. [3] **Paragraph 4.2** further provides that Assuming Bank agrees

6   to <u>honor and perform</u> from and **after** Bank Closing, all duties and obligations with respect to the

7   Failed Bank's credit card business. Thus, Defendant had the obligation to review Plaintiffs'

8   account and make sure that it was properly coded, "DNC". [4]

9       Defendant's twisted interpretation regarding notice would eviscerate the intent and

10   purpose of RFDCPA and allow Defendants to place over (259) calls over a three month period

11   with total impunity. This would leave Plaintiffs without a remedy and this is certainly not what

12   was intended by the drafters of RFDCPA. In fact, it was this very rogue conduct that was

13   intended to be punished under the RFDCPA.

14       In addition, it is alleged that Plaintiffs also gave Defendant Chase verbal notice sometime

15   between March through May of 2009. (FAC §28) Thus, not only did the Defendant receive two

16   separate written notices, it is also alleged that it received verbal notice as well.

17       For purposes of this motion, all of Plaintiff's factual allegations pertaining to both written

18   notices and verbal notice are specifically alleged and are to be accepted as true. As such

19   Defendants attempted attack on Plaintiff's RFDCPA claims is defeated. <u>Yack v. Washington</u>

20   <u>Mutual, Inc.</u> 2008 WL 2492169 (N. D. Cal. 2008); <u>Burgert v. Lokelani Bernice Pauahi Bishop</u>

21   <u>Trust</u> 200 F. 3d 661, 663 (9th Cir. 2000); <u>Gibson v. United States</u> 781 F. 2d 1334, 1337 (9th Cir.

22   

23       [3] The limitation thereon at Paragraph 2.5 appears to apply just to lending or loan

24   purchasing activities.

25       [4]"DNC" stands for, "Do not collect," which this code or similar coding is typically used

26   upon receipt of a Cease and Desist Notice.

27   

28

1986).

C.    **Defendant Chase Violated 15 U.S.C. §1692c(a)(1) by Calling Plaintiffs on Easter,**
      **Mother's Day and Memorial Day .**

Defendant Chase argues that it only made the call on Memorial Day and it did not make the calls on Easter and Mother's Day. Chase argues that IC Systems made the calls on Easter and Mother's Day and as such Plaintiff can not state a cause of action under §1692c(a)(1) at least to the extent that it is based on calls on those days.  However, Plaintiffs specifically alleged "IC indicates a call from IC Systems on Chase's behalf." (FAC ¶ 56) Further, Plaintiffs allege, "Defendants and each of them were acting on their own behalf and as the agents of each other." (FAC ¶16)

Defendant Chase ignores basic principals of agency.  Under California Civil Code §2330:
"An agent represents his principal for all purposes within the scope of his actual or
ostensible authority, and all the rights, and liabilities which would accrue to the agent
from the transaction within such limit, if they has been entered into on his own account,
accrue to the principal. "

Plaintiffs specifically alleges that IC Systems was calling on this account on behalf of Defendant Chase. (FAC ¶ 56) This allegation must be accepted as true. Thus, even though Defendant may not have made the calls on Easter and Mother's Day, as the principal, it is responsible for the action taken by its agent, IC Systems. As such, Plaintiffs have alleged a valid cause of action under §1692c(a)(1) for not only the call on Memorial Day, but also the calls on Easter and Mother's Day, even if the calls were made by IC System. Furthermore as alleged and set forth herein, Defendant Chase had actual written and verbal notices to cease and desist, but nevertheless Defendant and its agent IC Systems contacted Plaintiffs on Mothers Day, Memorial Day, and Easter, days "traditionally spent with ones family" and "holidays known or should have been known to be inconvenient to Plaintiffs." (FAC ¶ 120).

///

**D.** **Plaintiffs Stated a Cause of Action under §1692e(8), the Seventh Cause of Action and under §1785.25(a), the Eighth Cause of Action since Plaintiffs have alleged Defendant Chase had Actual Knowledge of the Fact Plaintiffs Disputed the Debt**

First and foremost, as specifically alleged Defendant intentionally and erroneously reported on a monthly basis that this account was not disputed. (FAC ¶¶ 129 and 137) It is also alleged that Defendants "**willful and knowing**" violated the RFDCPA. (FAC ¶133) As set forth in the FAC and as argued above, the Cease and Desist Notices, **Exhibit "A"** were both sent, five months <u>after</u> Plaintiffs credit card account was transferred to Defendant. (FAC 23 and 24) The Cease and Desist was sent via certified mail. (FAC 24) But, most importantly the receipt of the cease and desist notices are verified through **certified mail receipt**, attached collectively as **Exhibit "B"** to the FAC and dated March 9, 2009. Thus, just because addressed to WAMU it does not mean Chase did not receive the same and have actual knowledge as alleged.

Moreover, if Defendant failed to change its inquiry address over five months after transfer of this account, Defendant Chase should bear the burden of the same. Otherwise, all creditors assuming credit card accounts from defunct banks will have no incentive to properly note it's new inquiry address and code these accounts. Defendants cannot claim lack of actual knowledge if it was created by its own design.

**E.** **Plaintiffs Alleged A Valid Cause of Action for Invasion of Privacy - Intrusion upon Seclusion**

The elements of a cause of action for the tort of intrusion upon seclusion are "(1) an intentional intrusion (physical or <u>otherwise</u>); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." <u>Fausto v. Credigy Servs. Corp.</u>, 598 F. Supp. 2d 1049, 1056 (N.D. CA 2009) (only (90) calls were placed); <u>Panahiasl v. Gurney</u>, 2007 U.S. Dist. Lexis 17269 (N.D. Cal. 2007), (repeated phone calls at work) *citing to*, <u>Kuhn v. Account Control Technology</u>, 865 F. Supp. 1443, 1448 (D. Nev. 1994). <u>Joseph v. Mac Intyre Cos., LLC</u>

1   238 F. Supp. 2d 1158, 1169. See also, Deteresa v. Am. Broad Cos., Inc., 121 F.3d 460, 465 (9th

2   Cir. 1997) The gist of Defendants' argument is that Plaintiffs failed to establish an "intrusion".

3   California courts have long recognized  this common law tort in the FDCPA context and have

4   found **repeated and continuous calls** to collect on a debt give rise to a claim for intrusion upon

5   seclusion. Shulman v. Group W. Productions, Inc., 18 Cal. 4th 200, 231 (1998); Joseph v. J.J.

6   Mac Intyre Cos., LLC, 281 F. Supp. 2d 1156, 1159 (N.D. Cal. 200); and Restatement (2d) of

7   Torts §652B.

8          In Pansahiasl supra, the court found that "repeated and continuous calls in an attempt to

9   collect a debt, just like the calls made by Defendant Chase to Plaintiffs, gave rise to a claim for

10   intrusion upon seclusion." 2007 U.S. Dist. at Lexis 17269. The unlawful contact continued,

11   despite verbal and written cease and desist orders, just like what is alleged herein. Likewise, 15

12   U.S.C. § 1692(d)(5)  indicates that "causing a telephone to ring or engaging any person in

13   telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any

14   person at the called number" is abusive and harassing.

15          In another recent decision, Fausto v. Credigy Servs. Corp., 598 F. Supp. 2d 1049, 1056

16   (N.D. CA 2009), the court also recognized that repeated and continuous calls in an attempt to

17   collect a debt give rise to a claim for intrusion upon seclusion. The court reasoned that in light of

18   the common law and statutory proscriptions on abusive debt collection practices, a reasonable

19   jury could find defendants liable for the tort of intrusion upon seclusion. In Fausto, the debt

20   collector made **(200) calls**, but over a **19 month period**, a far long period than involved herein.

21   Defendants made **(259) calls** within a **three month period**. The shear unwavering and relentless

22   volume of calls give rise to a cause of action for invasion of privacy.

23          In this case, all of Defendants' communications are set forth at FAC ¶56. Defendant

24   called Plaintiffs (78) times in (13) consecutive days. (FAC ¶¶ 51-53, 100-104, 113-115 and 146)

25   There were days when Defendant would call (10) times in a single day. (FAC ¶ 100-104)

26   Plaintiffs alleges that all of these actions are highly offensive to a reasonable person (FAC ¶140-

27

28

142) and as such Plaintiffs have pled a prima face case for **intrusion upon seclusion** as set forth in the **Ninth Cause of Action**.

F.   <u>Plaintiffs have Pled a Physical Injury and as such have stated a Cause of Action for</u>
     <u>Negligence</u>

Under California law, the elements of cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate or legal cause between the breach and (4) the plaintiff's injury. <u>Mendoza v. City of Los Angles</u> 66 Cal. App. 4th 1333, 1339 (1998).   Defendants claim that Plaintiffs have failed to allege a physical injury this is simply not true. Plaintiffs have alleged that as a result of the Defendant's scorched earth tactics in calling them over (259) times, "Patricia Thompson suffered from atrial fibrillation and severe migraine headaches." (FAC ¶¶ 67, 143, and 154) Plaintiffs also specifically allege that Plaintiffs suffered from physical harm. (FAC ¶ 155).

In addition, the court have also allowed recovery for emotional distress damages, absent impact or physical injury where the negligence is highly unusual or the conduct of the Defendant is outrageous, as well as having predictable emotional distress. <u>Allen v. Jones</u> 104 Cal. App. 3d 207, 215 (1980) (mishandling of cremated remains of brother); <u>Molien v. Kaiser Foundation Hospitals</u> 27 Cal. 3d 916, 930, (1980) (negligent advise to patient that she suffered from syphilis, resulting in severe stress to her husband); <u>Crisci v. Security Ins. Co.</u> 66 Cal. 2d 425 (1967); and <u>Dillon v. Legg</u> 68 Cal. 2d 728 (1968) ( potential recovery for mental distress through witnessing of an injury to a close relative).

The subject case is beyond the pale of any average RFDCPA case. The conduct is outrageous. The Defendant Chase called and caused Plaintiffs to be called (259) times within only thee months. One can easily understand the emotional trauma that would follow from the shear volume of calls within such a short period of time. Even in the <u>Fausto</u> case <u>supra</u>, although there were (200) calls, the calls were placed over a (19) month period. In this case, the calls occurred in a far shorter period of time and intensified the experience. The Defendant's scorched

earth tactics of calling (10) times within a single day on several days is more than sufficient allegations of the extreme and outrageous conduct of Defendant Chase. The fact that Plaintiff Patricia Thompson suffered from stress that caused atrial fibrillation which is foreseeable based on the high volume of calls. Thus, recovery of emotional damages should be allowed and is proper even without physical injury.

**G.    Calling a Person (259) Times is Sufficiently Outrageous and Extreme Conduct for Purposes of stating a Cause of Action for Intentional Infliction of Emotional Distress**

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by defendant with the intention of causing, or with reckless disregard of the probability of causing emotional distress; (2) the plaintiff is suffering from severe emotional distress; and (3) that defendant caused the motional distress. Christensen v. Superior Court  54 Cal 3d 868,903 (1991). On its face, Plaintiffs' FAC adequately alleges all three elements.

In Kindley v. FlagStar Bank (Chase Manhattan Mortgage Corporation) 2004 U. S. Dist. Lexis 31025, (S.D. Cal. Oct. 28, 2004), a case out of the Southern District, Chase made almost the  identical arguments as it does in this case. Like in the instant case, Chase filed a motion to dismiss alleging plaintiff had failed to allege that Chase's debt collection activities was so extreme and outrageous so as to exceed the bounds of decency. The Kindley court rejected this argument and so should this court. Kindley, like the Plaintiff herein alleged that Chase engaged in a "systematic and mean-spirited" effort to collect a debt from Plaintiff. Similarly, Plaintiffs herein specifically allege:

"Defendants' outrageous actions against the Plaintiffs occurred after Defendants knew

Plaintiffs were represented by Doan Law Firm, LLP and in fact ... such conduct ... shows

the audacity and scorched Earth tactics that Defendant would employ a "stop for

1   nothing" attitude" to collect a debt. (FAC ¶160)

2        In <u>Bolton v. Pentagroup Financial Services, LLC</u> 2009 U.S. Lexis 25585 (E.D. Cal. Mar.

3   16, 2009), the court noted that the intensity and duration of the distress are factors to consider in

4   determining severity. Severe emotional distress means, emotional distress of a substantial

5   quantity or enduring quality. <u>Id.</u> In this case, Plaintiffs have alleged both substantial emotional

6   distress in terms of quantity, (259) calls and also as to quality, the calls all occurred within the

7   span of three months and as such intensified and magnified the effect.

8        Further, Plaintiffs specifically alleges:

9        " Defendants conduct was outrageous and extreme as evidenced by these facts:

10            (a) Defendant contacted Plaintiffs (259) times;

11            (b) Defendant called multiple times a day sometimes making (10)-(12) calls in a

12            single day;

13            (c) Defendants placed calls to Plaintiffs at least ninety eight times in only twenty-

14            six days demonstrating a pattern and practice of unlawful harassment and abuse to

15            coerce payment." (FAC ¶ 157).

16  Thus, Plaintiffs have more than sufficiently alleged extreme and outrageous conduct by

17  Defendant Chase.

18

19  **H.**     **<u>Plaintiffs Have Properly Stated a Cause of Action for Tort-In-Se Under any one of</u>**

20         **<u>the RFDCPA Violations Alleged in Causes of Action One through Eight</u>**

21       The Plaintiffs, as an injured party and an intended beneficiary of the Rosenthal Act, can

22  state a claim for tort-in-se. <u>Joseph v. Mac Intyre Cos., LLC</u>, 238 F. Supp. 2d 1158, 1170 (N.D.

23  Cal. 2002). "Violation of a statutory duty to another may therefore be a tort, and violation of a

24  statute embodying a public policy is actionable. <u>South Bay Building Enterprises, Inc. v. Riviera</u>

25  <u>Lend-Lease, Inc.</u>, 72 Cal. App. 4th 1111, 1123 (1999). In <u>Panahiasl</u> <u>supra</u>, the court also

26  recognized that violation of statutory duty gave rise to a cause of action under tort in se.

27

28

1   **Causes of Actions One through Eight,** each allege violations of the RFDCPA that form

2   a basis for the tort in se cause of action. Defendant did not even bring it Motion to Dismiss as to

3   Plaintiffs **Fourth and Fifth Causes of Action**, either of which could form the basis for the tort

4   in se by themselves. Thus, Plaintiffs have more than alleged sufficient facts to state a cause of

5   action for tort in se.

6

7   I.   <u>Defendant's Argument for Preemption Does not Apply to Libel and §1785.25</u>

8           Defendant argues that the FCRA (15 U.S.C. §1681, et. seq.) preempts all state statutory

9   and common law claims relating to the furnishing of allegedly inaccurate or incorrect credit

10  information . 15 U.S.C. 1681h(e) generally recognizes that no consumer may bring an action in

11  the nature of defamation, "<u>except</u> as to false information furnished with malice or willful intent

12  to injure such consumer." In Plaintiff's FAC at  ¶96, it is alleged that Defendant's conduct in

13  failing to note Plaintiff's account as "disputed" was "willful and intentional". For purposes of a

14  motion to dismiss, this is sufficient.

15          In addition,  the Ninth Circuit Court of Appeals in <u>Gorman v. Wolpoff & Abramson,</u>

16  <u>LLP, et. al.,</u> 552 F. 3d 1008, 1028 (9th Cir. 2009) also recognized that an action under Civil

17  Code §1785.25 was not preempted under the FCRA. The **Gorman** court recognized that under

18  15 U.S.C. §1681t, the FCRA did not preempt a cause of action under California Civil Code

19  §1785.25(a). 15 U.S.C. §1681t(b)(ii) specifically excepts actions under civil code §1785.25(a)

20  and provides:

21              "Except that this paragraph <u>shall not apply</u>–

22                      (ii) with respect to section 1785.25(a) of the California Civil Code"

23                      (emphasis added)

24  There is specifically no preemption as to section 1785.25(a). The <u>Gorman</u> Court held:

25              "Because the plain language of the preemption provision does not apply to private

26              rights of action and because the likely purpose of the express exclusion was

27

28

---

1    precisely to permit private enforcement of these provisions, we hold that the

2    private right of action to enforce California Civil Code Section 1785.25(a) is not

3    preempted by the FCRA."

4  Defendant's argument for preemption is not relevant to Plaintiff's **Thirteenth Cause of Action**

5  for **Libel** and Plaintiff's statutory claims under §1692e(8) and §1785.25.

6

7  **J.     Defendant's Motion to Strike Plaintiffs' Prayer for Damages is Unfounded**

8      First, Defendant once agin misrepresents to this court that the Plaintiffs are calculating

9  damages based on each phone call. This is simply not true. Plaintiffs are seeking statutory

10  damages based on each statutory violation. Defendant by its persistent, unwavering and

11  systematic collection efforts violated no less that (7) separate statutory provisions of the

12  RFDCPA and the FDCPA.

13      **1.     Under the RFDCPA, Damages Should Be awarded per violation, not**

14          **per action**

15      Defendants' motion is based on a misinterpretation of the RFDCPA. Defendants

16  misguided interpretation does not allow for the recovery of statutory damages suffered for

17  multiple violations in a single action. Contrary to Defendants' position, California Civil Code

18  1788.30(b) specifically provides:

19          "Any debt collector who willfully and knowingly violates this title with

20          respect to any debtor shall, **in addition to actual damages sustained by**

21          **the debtor as a result of the violation,** also be liable to the debtor only in

22          an individual action, and his additional liability therein to that debtor shall

23          be for a penalty in such amount as the court may allow, which shall not be

24          less than one hundred dollars ($100) nor greater than one thousand dollars

25          ($1,000)." (emphasis added)

26  Defendants' Motion to Strike conveniently excluded the aforementioned emphasized

27

28

1   language of Section 1788.30(b). The phrase "as a result of <u>the violation</u>" contained in the

2   language of Section 1788.30(b) illustrates that damages are not limited to the actions, but rather

3   by the <u>violation</u> or violations of RFDCPA by the debt collector.

4        Defendants' Motion to Strike fails to meaningfully cite any supporting California case

5   law interpreting 1788.30(b) and instead relies on the cases decided solely under the FDCPA.

6   There are **no** California cases specifically precluding recovery for multiple violations under

7   California Civil Code §1788.30(b). In fact, the Court in <u>Bankston v. Phycom Corp.</u>, 2008 U.S.

8   Dist. LEXIS 83073 (N.D. Cal. Sept. 25, 2008) made no mention of a "single action" limitation as

9   asserted by Defendants. <u>Id.</u> Instead, the Court in <u>Bankston</u> focused on the **acts of a defendant,**

10  and held that a <u>single act</u> by a defendant should only constitute a **single violation** triggering the

11  awarding of damages. Plaintiff asserts the Court in <u>Bankston</u> left the door open to multiple

12  recovery for <u>multiple violations</u>, whether or not such violations are asserted in a "single action."

13  Plaintiffs case is dramatically different from the (2) statutory violations alleged in <u>Bankston</u>. In

14  this case, there are <u>(7) separate and distinct</u> statutory violations alleged and there are (259) calls.

15      2.      **The Plain Meaning of Civil Code §1788.30 Supports Awarding Damages**

16              **Based on Each Violation**

17      The Court in <u>Wolski v. Fremont Investments & Loan</u> 127 Cal. App. 4th 347, 351(2005)

18  stated:

19              "In reviewing a statute, we first examine the words themselves

20              because the statutory language is generally the most reliable

21              indicator of legislative intent. The words of the statute should be

22              given <u>ordinary and usual meaning</u> and should be construed in their

23              statutory context. If the statutory language is unambiguous, we

24              presume the Legislature meant what it said and the plain meaning

25              of the statute governs." (emphasis added)

26  Here, the language in Civil Code §1788.30(b) is plain and the meaning is clear and  provides that

27

28

1  damages will be awarded for "**the violation**". It is Plaintiffs' contention that there is a maximum

2  statutory penalty of $1,000.00  per statutory violation. There is no ambiguity.

3       Further, the legislative history reveals that Civil Code §1788.17 was added in 2000 for

4  the purpose of incorporating certain portions of the Fair Debt Collection Practice Act

5  ("FDCPA"), the federal version of the RFDCPA. However, the only provisions incorporated

6  were 11 U.S.C. §1692b-1692j. The Legislature did not incorporate 15 U.S.C. §1692k, the

7  damages provision of the FDCPA into the RFDCPA . The Legislature had an opportunity to do

8  so and did not. The Legislature in drafting the RFDCPA in 1977 also had opportunity to use the

9  language in the FDCPA limiting damages, but did not. It could have easily adopted 1692k, but

10  instead drafted a unique damages provision that uses the word "violation" and not "action".

11  Thus, the Court should honor the plain meaning of §1788.30.

12      **3.**    **Defendant's Interpretation of RFDCPA Runs Counter to the Spirt of the**

13          **RFDCPA**

14       The RFDCPA was enacted to "prohibit debt collectors from engaging in unfair or

15  deceptive acts or practices in the collection of consumer debts" Cal. Civ. Code. § 1788.1. The

16  interpretation of RFDCPA asserted by the Defendants Chase would allow debt collectors who

17  commits a series of continuous and egregious violations of the RFDCPA to be no more liable

18  than a debt collector who committed a **single** violation. Defendants' interpretation of the

19  RFDCPA, fails to take into consideration the underlying incentive of the drafters, which was to

20  deter debt collection agencies from harassing and abusing debtors. There is no deterrence in

21  limiting the Plaintiffs' recovery to only $1,000.00 for any and all violations committed by

22  Defendant Chase. There is absolutely no deterrent effect on rouge debt collectors like Defendant

23  Chase if the maximum potential penalty is only $1,000.00. Rouge debt collectors can call

24  multiple times and violate multiple statues, with no serious consequences. In accordance with the

25  stated purpose of the RFDCPA and the language contained in Section 1788.30(b), it is clear

26  damages are not limited by the action brought by a consumer, but rather the violations .

27

28

4.      **Defendant's Interpretation of RFDCPA would cause undue burden on the Court**

Further evidence that Defendants' interpretation of Section 1788.30(b) is misguided can be reasoned by looking to the likely deleterious effects on the Court system caused by forcing plaintiffs to litigate multiple violations by a single debt collector in separate actions. Regardless of the interpretation of Section 1788.30(b), no language contained therein prevents a debtor from bringing multiple actions against a single creditor for multiple violations. Under the interpretation set forth by Defendants, a debtor who alleges six (6) violations of the RFDCPA in a single claim, would only be able to recover <u>once</u> under Section 1788.30(b), however, if the same debtor was to initiate six (6) separate actions, one for each alleged violation, that debtor would be able to recover in each of the six (6) actions. Interpreting Section 1788.30(b) in this manner, it likely would lead to excessive and redundant litigation, which could easily be determined in a single action. This does not in any way serve judicial economy.

K.     **There is Absolutely No Basis to Strike Exhibit "A" Plaintiffs' Notice to Cease and Desist**

Defendant asserts that the  Cease and Desist Notice sent by Plaintiffs to WAMU, **Exhibit "A"** contradicts the FAC is simply unfounded as argued above. Plaintiff clearly alleges that Chase is the successor to WAMU and as such there is absolutely no contradiction. (FAC ¶¶ 9, 24, and 40) Moreover, as set forth above, Defendant Chase had the opportunity to change the inquiry address and did not. It is clear the Cease and Desist Letter sent via certified mail was <u>received</u> and receipt of which is verified. Thus, as the successor in interest Chase is charged with notice or alternatively by reviewing this account could have readily ascertained the fact that Plaintiffs were represented by Doan Law Firm, LLP. Moreover, pursuant to the P&A agreement, Defendant Chase bears responsibility for improperly coding this account and also because it failed to update the inquiry address for this account.

1

## V.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss First Amended Complaint and the Motion to Strike.

Dated: January 29, 2010

Respectfully submitted,

DOAN LAW FIRM, LLP

By:    s/Karen S. Spicker
       Karen S. Spicker, Esq
       Attorney for Plaintiffs
       GENE ROBERT THOMPSON, and
       PATRICIA THOMPSON