1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   PATRICIA THOMPSON, et al.,                CASE NO. 09CV2143 DMS (POR)

12                            Plaintiffs,       **ORDER GRANTING IN PART**
                                                **AND DENYING IN PART**
13                                              **DEFENDANT CHASE BANK'S**
                                                **MOTION TO DISMISS AND**
14              vs.                             **DENYING DEFENDANT'S**
                                                **MOTION TO STRIKE**
15
16                                              [Doc. 8]

17   CHASE BANK N.A., et al.,

18                            Defendants.

19

20          Pending before the Court is Defendant Chase Bank's motion to dismiss Plaintiffs' First

21   Amended Complaint ("FAC").  For the reasons set forth below, the motion is granted in part and

22   denied in part.

23                                           **I.**

24                                    **BACKGROUND**

25          Plaintiffs Patricia Thompson and Gene Robert Thompson allege that Defendants Chase Bank

26   and IC Systems, Inc. violated the Rosenthal Fair Debt Collection Practices Act  ("RFDCPA"), Cal.

27   Civ. Code § 1788, et seq., and committed other torts when attempting to collect a credit card debt.

28   Plaintiffs allege Defendants called Plaintiffs 259 times over a period of three months, including

holidays, in order to collect the debt.  (FAC, ¶¶ 50-56.)

Plaintiffs further allege they sent a cease and desist letter, and that any attempts to collect the debt after the cease and desist letter violated the RFDCPA.  (*Id.* ¶¶ 23-24.)  The letter was addressed to Washington Mutual/Providian.  (*Id.* at Ex. A.)  Defendant Chase Bank purchased certain assets of Washington Mutual, including Plaintiffs' credit card account, after Washington Mutual went into bankruptcy.  (*Id.* at ¶ 24.)

Plaintiffs filed suit in the Superior Court of California, County of San Diego on August 5, 2009. (Doc. 1.)  On September 30, 2009, Chase removed the matter to this Court.  (*Id.*)  On November 4, 2009, Chase filed a motion to dismiss Plaintiffs' complaint.  (Doc. 5.)  Rather than oppose, Plaintiffs filed a First Amended Complaint.  (Doc. 6.)  The Court therefore denied Chase's motion as moot.[1]  (Doc. 7.)  Chase filed the instant motion on January 14, 2010.  (Doc. 8.)  Plaintiffs filed an opposition, (Doc. 9), and Defendant filed a reply.  (Doc. 13.)

## II.

## DISCUSSION

Chase moves to dismiss claims 1 through 3 and 6 through 13 of the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Chase also moves to strike certain allegations and damages requests.

### A.    Legal Standard

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Determining

---

[1] Prior to Chase filing its motion to dismiss the original complaint, the Court held an informal conference with the parties, wherein Plaintiff did not agree to amend the complaint.  (Doc. 4.)  Instead, Plaintiff amended the complaint after receipt of Defendant's motion.  Defendant now seeks attorneys fees and costs for "opposing Plaintiffs' virtually identical complaints."  (Def. Mem. P. & A. at 1.)  The Court declines to reach this issue without a noticed motion.

1   whether a complaint states a plausible claim for relief will ... be a context-specific task that requires

2   the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal*

3   *v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  In *Iqbal*, the Court began this task "by identifying the

4   allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951.  It then

5   considered "the factual allegations in respondent's complaint to determine if they plausibly suggest

6   an entitlement to relief." *Id.* at 1951.

7   **B.      RFDCPA**

8       Claims 1 through 8 of the FAC allege violations of the RFDCPA, under several provisions of

9   both the RFDCPA and the federal Fair Debt Collection Practices Act (FDCPA).  Defendant moves to

10  dismiss claims 1 through 3 and 6 through 8.

11      *1.      Claims 1 through 3*

12      Claims 1 through 3 of the FAC allege that Chase violated the RFDCPA by attempting to

13  contact Plaintiffs after Plaintiffs notified Chase that they were represented by an attorney and that they

14  disputed the amount of the debt.  Cal. Civ. Code §§ 1788.14, 1788.17; 15 U.S.C. §§1692c(a)(2),

15  1692c(c).  It is undisputed that the cease and desist letter sent by Plaintiffs was addressed to

16  Washington Mutual, not Chase.  (FAC, Ex. A.)  Thus, the issue is whether Chase had notice of the

17  contents of the letter.

18      On September 25, 2008, Chase entered into a Purchase and Assumption Agreement ("P&A

19  Agreement") with Washington Mutual, which was then under a receivership with the Federal Deposit

20  Insurance Corporation ("FDIC").  (Cho Decl., Ex. B.)  Under the P&A Agreement, Chase assumed

21  "all duties and obligations with respect to [Washington Mutual's] debit and credit card business," and

22  received all records pertaining to the credit card business.  (P&A Agreement, §§ 4.2, 6.1.)  Five

23  months later, on February 19, 2009, Plaintiffs' counsel sent a letter to Washington Mutual ordering

24  it to cease and desist all communications with Plaintiffs and informing it that the debt was disputed.

25      Plaintiffs contend their counsel's letter to Washington Mutual provided notice to Chase

26  because Chase acquired Plaintiffs' credit card account and Plaintiffs' certified mail receipt was signed.

27  Chase, however, already had acquired Plaintiffs' credit card account at the time Plaintiffs sent the letter

28  and thus, there was no reason to provide notice to Washington Mutual.  Although the mail receipt was

signed, it is unclear what entity was located at that address at that time. Chase had acquired certain assets of Washington Mutual, but Washington Mutual itself was under a receivership operated by the FDIC. The certified mail receipt does not show that Chase received the letter.

Plaintiffs next contend that Chase had notice of the letter because the P&A Agreement transferred records to Chase. However, that transfer of records would have occurred in September 2008, when Chase entered into the P&A Agreement, not five months after the fact when Washington Mutual no longer existed. Similarly, Plaintiffs' argument that notice is imputed to Chase as the successor to Plaintiffs' account fails. The cases cited by Plaintiffs do not advance their cause because those cases involve situations where the information was known prior to transfer of ownership. *See In re Crown Vantage, Inc.*, 2004 U.S. Dist. LEXIS 13810, *23-24 (N.D. Cal. 2004) (holding that corporation, after a transfer of ownership, was bound by knowledge it acquired before transfer); *Ojavan Investors Inc., v. California Coastal Comm'n*, 26 Cal. App. 4th 516, 527 (1994) (successors-in-interest to land bound by restrictions previously agreed to by predecessors-in-interest). Plaintiffs do not provide any authority for the proposition that Chase is imputed with knowledge of information provided to Washington Mutual after Chase had acquired ownership of Washington Mutual's assets. Likewise, Plaintiffs' argument that Chase's billing statement did not provide an address for credit notices is unavailing because the billing statements gave Plaintiffs notice that the cease and desist letter should go to Chase, not Washington Mutual.[2]

Finally, Plaintiffs allege they gave verbal notice to Chase in addition to written notice. The complaint alleges that "sometime during March through May Plaintiff Patricia Thompson did give verbal notice to Defendants to stop calling." (FAC ¶ 28.) This conclusory allegation does not establish Chase received notice that Plaintiffs were represented by counsel or that the account was disputed.

Because Plaintiffs failed to give notice to Chase, Plaintiffs' claims 1 through 3 fail. Accordingly, Defendant's motion as to these claims is granted without prejudice.

---

[2] Plaintiffs also contend that if the address was incorrect it was due to Chase's error because the letter was sent to an address listed on Plaintiffs' credit report and Chase had a duty to provide accurate contact information to the credit bureaus. The credit report provided by Plaintiffs, however, is incomplete and does not provide pertinent account information, such as dates and account status. The Court denies Plaintiffs' request for judicial notice of the document.

2.      *Claim 6*

Plaintiffs' sixth claim is for violation of the RFDCPA through violation of 15 U.S.C. § 1692c(a)(1), which provides that a debt collector may not contact a consumer:

> at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location

Plaintiffs allege Defendants violated the statute by calling Plaintiffs on Easter Sunday, Mother's Day, and Memorial Day.  (FAC ¶ 120.)

Chase argues that the exhibit provided by Plaintiffs detailing the alleged phone calls shows that Chase called Plaintiffs on Memorial Day, but that Defendant IC Systems called Plaintiffs on Easter Sunday and Mother's Day.  Defendant contends it is not liable for phone calls made by IC Systems because creditors are not vicariously liable for the actions of debt collectors.  The cases cited by Defendant rely on the FDCPA.  These cases hold that "a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect a debt." *Doherty v. Citibank*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005) (citations omitted).  Under the FDCPA, creditors generally are not considered "debt collectors."  *Id.* at 161-62.  The RFDCPA, on the other hand, contains a broader definition of the term, which can include creditors.  *See, e.g., Offril v. J.C. Penny Co.*, 2009 U.S. Dist. LEXIS 1169 at *7 n.1 ("[U]nlike the FDCPA, which creates a private right of action only against debt collectors, and not original creditors (with limited exceptions), the [RFDCPA] creates a private right of action against both debt collectors and original creditors.").  Defendant does not address the issue of vicarious liability under the RFDCPA.

Defendant further argues that the claim fails because the statute does not prohibit debt collectors from calling consumers on holidays.  While that is true, debt collection calls on holidays still may be "inconvenient" or "unusual" under the statute.  Accordingly, Chase's motion to dismiss this claim is denied.

3.      *Claims 7 and 8*

Plaintiffs' seventh and eighth claims for relief allege Chase violated the RFDCPA by not informing credit agencies that the debt was disputed.  Both claims rely on the fact that Chase received

1   notice of the cease and desist letter.  (FAC ¶¶ 128, 137.)  Accordingly, the claims fail for the same

2   reasons as Claims 1 through 3.

3   **C.      Invasion of Privacy**

4          Plaintiffs allege that the 259 phone calls to their home constituted an invasion of privacy by

5   intrusion upon seclusion.  A claim for intrusion upon seclusion contains two elements: 1) intrusion into

6   a private place, conversation or matter, and 2) in a manner highly offensive to a reasonable person.

7   *Shulman v. Group W Productions*, 18 Cal. 4th 200, 232 (1998).  To show intrusion, a plaintiff must

8   have "an objectively reasonable expectation of seclusion or solitude in the place, conversation or data

9   source," and the defendant must have "penetrated some zone of physical or sensory privacy

10  surrounding, or obtained unwanted access to data about, the plaintiff." *Id.*

11         Defendant, citing *Castellanos v. JP Morgan Chase*, 2009 U.S. Dist. LEXIS 53067 (S.D. Cal.

12  2009), contends Plaintiffs' allegations that Chase called them "too often" does not state a claim for

13  intrusion upon seclusion.  In that case, the court found the invasion of privacy claim speculative where

14  the defendant called the plaintiff over 13 times and sent at least two letters seeking payment for the

15  debt. *Id.* at *27-29.  Here, Plaintiffs allege they were contacted 259 times in a three month period,

16  including on many occasions 10 to 12 times in a single day.  This is sufficient to state a claim for

17  invasion of privacy. *See Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009)

18  ("Courts have held that 'repeated and continuous calls in an attempt to collect a debt give rise to a

19  claim for intrusion upon seclusion.'").  Accordingly, Defendant's motion to dismiss this claim is

20  denied.

21  **D.      Negligence**

22         Defendant argues that Plaintiffs' negligence claim fails because, among other things, Plaintiffs

23  cannot establish that Chase caused Plaintiffs' injuries.  The elements of negligence are "(1) a legal duty

24  to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the

25  plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  Here,

26  Plaintiffs allege Defendants "negligently inflicted emotional distress" by communicating with

27  Plaintiffs after receiving the cease and desist letter.  Since Defendant did not receive notice of the cease

28

1    and desist letter, Plaintiffs' claim is dismissed with leave to amend.[3]

2    **E.    Intentional Infliction of Emotional Distress**

3          The elements of an intentional infliction of emotional distress claim are: "(1) extreme and

4    outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

5    probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

6    distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

7    conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (citations omitted).  Extreme and

8    outrageous conduct must be such that it "exceed[s] all bounds of that usually tolerated in a civilized

9    community." *Id.*

10          Defendant contends that making "too many phone calls" to Plaintiffs is insufficient to

11    constitute outrageous conduct.  Plaintiffs, however, allege more than just a high number of calls.  They

12    allege they were called 259 times in a three month period, including holidays; they further allege that

13    they received up to 10 to 12 calls a day, and that they were called at least 98 times in only 26 days.

14    (FAC ¶¶ 120, 157.)   While these allegations sufficiently allege outrageous conduct, the claim

15    nonetheless fails.

16          Plaintiffs attempt to allege intentional conduct based upon Defendant making phone calls after

17    receipt of the cease and desist letter.  (*Id.* at ¶ 158.)  Because the present allegations fail to establish

18    Chase received notice of the letter, Plaintiffs' allegations of intentional conduct that rest upon such

19    notice also fail.  Further, Plaintiffs never allege Defendant acted with intent to cause, or with reckless

20    disregard of the probability of causing, emotional distress.  *See Christensen*, 54 Cal. 3d at 903 ("The

21    defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization

22    that injury will result.'").  Accordingly, this claim is dismissed with leave to amend.

23    **F.    Tort In Se**

24          Plaintiffs' tort in se claim is based on Defendant's alleged violations of the RFDCPA,

25    California Civil Code § 43, and 15 U.S.C. § 1666(b).  None of the claims for relief in the FAC allege

26    _____

27          [3] Plaintiffs style their tenth claim for relief as a "negligence" claim, but also allege Defendant's "negligently inflicted emotional distress" by communicating with Plaintiffs after receiving their cease and desist letter.  Negligence and negligent infliction of emotional distress are separate and distinct

28    claims.  Plaintiffs may clarify this discrepancy and attempt to state a claim with their amended complaint.

violations of California Civil Code § 43 or 15 U.S.C. § 1666(b), and thus, these claims cannot serve as the basis for a tort in se claim. Plaintiffs do, however, properly allege several RFDCPA violations.

Nonetheless, Defendant contends that violations of the RFDCPA cannot serve as the basis for tort in se claims. District courts have split on this issue. *See Castellanos v. JP Morgan Chase*, 2009 U.S. Dist. LEXIS 53067 (S.D. Cal. 2009) ("The Rosenthal Act already provides a specific private civil remedy and there is nothing to indicate that California intended to allow separate negligence tort claims based upon the duties created by the Rosenthal Act.")*; Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158, 1170 (N.D. Cal. 2002) (holding that the plaintiffs stated a claim for tort in se based on triable questions of fact of Rosenthal Act violations). The Court agrees with the reasoning in *Castellanos*, and declines to recognize a tort in se claim based solely on RFDCPA violations for which Plaintiffs have a private civil remedy. Defendant's motion to dismiss this claim is granted with prejudice.

### G. Libel

Plaintiffs' libel claim is based on the allegation that Chase willfully reported to the three credit bureaus that the account was not disputed. Because Chase never received notice that the account was disputed, the claim fails. The Court declines to reach Chase's preemption argument at this time.

### H. Motion to Strike

Defendant moves to strike several of Plaintiffs' requests for statutory damages. Although Defendant is correct that under 15 U.S.C. § 1692k statutory damages are limited to $1,000 per action, not per violation, the motion does not address the interplay between remedies available under the FDCPA and RFDCPA. The motion is therefore denied. Defendant's motion to strike allegations regarding Chase's knowledge of the cease and desist letter is denied as moot in light of the discussion above.

### III.

### CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted in denied in part. Defendant's motion to strike is denied. Plaintiffs may file a second amended complaint consistent with this Order within twenty (20) days of entry of this Order on the Court's docket.

1     **IT IS SO ORDERED.**

2     DATED:  March 30, 2010

3

4     _____
      HON. DANA M. SABRAW
5     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28